[Cite as *State v. Mabberly*, 2019-Ohio-891.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee/Cross-Appellant | : | Appellate Case No. 27729 |
| | : | |
| | : | Trial Court Case No. 2016-CR-2397 |
| v. | : | |
| | : | (Criminal Appeal from |
| JERRY A. MABBERLY | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant/Cross-Appellee | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 15th day of March, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee/Cross-Appellant

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellant/Cross-Appellee

JOHN K. CARROLL, Atty. Reg. No. 0002288, 4 Times Square, Suite 39-336, New York, New York 10013
    Attorney for Amicus Curiae, The Innocence Project, Inc.

ALEXIS AGATHOCLEOUS, Atty. Reg. No. 0002298, 40 Worth Street, Suite 701, New

York, New York 10013
    Attorney for Amici Curiae, The Innocence Project, Inc., The Innocence Network, and The Ohio Innocence Project

ELIZABETH BERRY, Atty. Reg. No. 0095524, 1255 New Hampshire Avenue, Apartment 832, Washington, D.C. 20036
    Attorney for Amicus Curiae, The Innocence Project, Inc.

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Jerry A. Mabberly, appeals from his convictions for four counts of rape of a person under 13 years of age, first degree felonies pursuant to R.C. 2907.02(A)(1)(b) and (B), and two counts of unlawful sexual conduct with a minor, third degree felonies pursuant to R.C. 2907.04(A) and (B)(3).   Raising five assignments of error, Mabberly argues that his convictions should be reversed because the trial court overruled his motion for acquittal under Crim.R. 29(A) in the absence of evidence sufficient to prove his guilt; because the jury found him guilty contrary to the weight of the evidence; because his defense counsel rendered ineffective assistance by failing to object to testimony offered by an expert witness pertaining to the victim's credibility, and again by failing to object to certain remarks made by the State during voir dire; and because the trial court purportedly referred to the charges against him in its instructions to the jury as established facts, rather than as unproven allegations, thereby implying his guilt.

{¶ 2} We find that the State introduced sufficient evidence to prove that Mabberly committed the charged offenses and that the jury did not clearly lose its way by returning verdicts of guilty in reliance on that evidence.   We find further that Mabberly's defense counsel did not render ineffective assistance, and that the trial court did not refer to the

charges against Mabberly in its instructions to the jury such that Mabberly's guilt was implied. Therefore, Mabberly's convictions are affirmed.

{¶ 3} The State raises a single cross-assignment of error in which it argues that the trial court abused its discretion by delivering an instruction to the jury regarding the limits of human memory. Although the basic principle articulated by the trial court may have been valid, we hold that the instruction as delivered arbitrarily incorporated critical concepts without defining them and effectively advised jurors to mistrust witnesses' recollections, rather than neutrally cautioning jurors that witnesses' memories can be inaccurate. By delivering the instruction and also allowing Mabberly to present expert testimony on the same subject, the trial court additionally risked giving jurors the impression that they should accept the expert's testimony as true, as opposed to determining for themselves whether, and to what extent, to credit the expert.

## I. Facts and Procedural History

{¶ 4} On November 2, 2016, a Montgomery County grand jury issued an indictment against Mabberly charging him with seven violations of R.C. Chapter 2907. Counts 1 and 2 of the indictment charged Mabberly with unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), and Counts 3 through 7 of the indictment charged Mabberly with rape of a person under 13 years of age, in violation of R.C. 2907.02(A)(1)(b). The victim of these offenses was the daughter of Mabberly's former girlfriend.

{¶ 5} With Mabberly's trial date approaching, the trial court submitted its proposed jury instructions to the parties for their review on May 1, 2017. State's Motion in Limine Regarding Jury Instructions 1, May 3, 2017. The proposed instructions included a

nonstandard component, drafted by the trial court, directed to the limitations and potential inaccuracy of human memory. *See* Transcript of Proceedings 13:3-15:13.[1] Two days later, the State filed a motion in limine objecting to that portion of the proposed instruction.

{¶ 6} At a hearing on May 5, 2017, the trial court indicated that it would use the instruction over the State's objection and expressed its intention to call an expert as the court's witness to testify on the subject of memory during Mabberly's trial. *See id.* at 19:15-20:3. The State then filed a pair of motions on August 1, 2017, objecting in the first to the prospect of the court's witness testifying at the trial, and requesting in the second that the court not question the witness under any circumstances. On August 3, 2017, the court overruled the first of the motions as moot, noting that it had reversed course and already "assured [the parties] that [it], * * *, would not call [the witness] at trial," and on August 8, 2017, it overruled the second.

{¶ 7} The trial court thus convened a somewhat unconventional deposition on August 16, 2017, for the purpose of consulting Dr. Craig Stark, a psychologist with expertise in the neuroscience of memory, about the text of the instruction. With the State and the defense present, along with Mabberly himself, the court examined Dr. Stark and afterward allowed the State and the defense to pose questions of their own. *See id.* at 58:2-58:19 and 87:9-118:17. Dr. Stark characterized the content of the instruction as scientifically accurate. *See id.* at 69:14-69:15 and 80:1-80:13.

{¶ 8} Mabberly's case proceeded to trial on August 21, 2017. Over the State's

---

[1] The transcript referred to in this opinion as the "Transcript of Proceedings" comprises motion hearings held on May 5, 2017; a pretrial conference held on August 9, 2017; and a deposition held on August 16, 2017. Transcript of Proceedings 66:9-67:5.

reiterated objection, the trial court included the challenged discussion of memory in its preliminary instructions to the jury.[2]   Trial Transcript 182:21-183:13.   At the State's request, the court entered a nolle prosequi with respect to Count 6 on August 23, 2017, and on August 24, 2017, the jury returned verdicts of guilty on the remaining charges.[3] The court filed a judgment entry on September 14, 2017, reflecting Mabberly's aggregate sentence of 40 years to life, with 30 years being mandatory.   Mabberly timely filed a notice of appeal on September 19, 2017, followed by the State's notice of cross-appeal on October 13, 2017.

## II. Analysis

{¶ 9} We address Mabberly's first and second assignments of error together because they are closely related.   For his first assignment of error, Mabberly contends that:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION AS TO EACH COUNT IN THE INDICTMENT.

And for his second assignment of error, Mabberly contends that:

APPELLANT'S CONVICTIONS WERE ENTERED AGAINST THE WEIGHT OF THE EVIDENCE.

{¶ 10} Mabberly argues in his first assignment that the trial court erred by

---

[2] The trial court delivered the bulk of its jury instructions before the parties presented their cases; the memory instruction was therefore not repeated at the close of evidence.   Trial Transcript 859:22-872:20 and 926:15-934:13.

[3] The counts were renumbered for trial.   Counts 1 and 2 of the indictment were respectively renumbered as Counts 5 and 6, and Counts 3-5 and 7 of the indictment were respectively renumbered as Counts 1-3 and 4.

overruling his motion for acquittal under Crim.R. 29, though he acknowledges the absence of any reference in the record to such a motion. Appellant's Br. 3-6. In his second assignment, he argues that the jury clearly lost its way in evaluating the evidence and, as a result, returned verdicts that constitute a miscarriage of justice. *See id.* at 6-7.

{¶ 11} An appellate court reviews a trial court's ruling on a motion under Crim.R. 29 by the same standard applicable to a claim based on the sufficiency of the evidence. *State v. Scott*, 2018-Ohio-198, 104 N.E.3d 143, ¶ 37 (2d Dist.), citing *State v. Bailey*, 2d Dist. Montgomery No. 27177, 2017-Ohio-2679, ¶ 17. Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the jury['s] verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based on the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 12} By contrast, in a challenge based on the weight of the evidence, an "appellate court acts as a 'thirteenth juror.' " *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 49 (2d Dist.), quoting *Thompkins* at 387. The appellate court must therefore review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717

(1st Dist.1983); *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A conviction "should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *See Hill* at ¶ 8, quoting *Martin* at 175.

**{¶ 13}** Although the appellate court "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses," the court "may determine which of several competing inferences suggested by the evidence should be preferred." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 6. A determination that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of the sufficiency of the evidence because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary* at ¶ 11.

**{¶ 14}** As Mabberly concedes, the record includes no reference to a motion for acquittal, and we find accordingly that Mabberly's first assignment of error is not supported by the record and is overruled.[4] We turn, then, to Mabberly's second assignment of error.

---

[4] The State seems to assume that Mabberly did move for acquittal, although such a motion does not appear in the record. Appellee's Br. 5-11. Mabberly contends in a footnote that in the absence of a motion for acquittal, his defense counsel failed to provide effective assistance. Appellant's Br. 3 fn.4. Yet, our finding that the jury's verdicts were not contrary to the weight of the evidence "necessarily includes a finding of sufficiency," meaning that Mabberly could not have established that he was prejudiced by counsel's omission of a motion for acquittal on his behalf. *Miller* at ¶ 48.

**{¶ 15}** To prove that Mabberly committed rape of a person under 13 years of age, the State had to present evidence showing that: (1) the victim was not his spouse, or the victim was his spouse but did not reside with him; (2) Mabberly engaged in sexual conduct with the victim;[5] and (3) at the time the sexual conduct occurred, the victim was under 13 years of age, whether or not Mabberly knew as much. *See* R.C. 2907.02(A)(1)(b). With respect to the first element, the State did not prove expressly that Mabberly and the victim were never married, yet the victim testified that she and Mabberly had made plans to marry once she reached 16 years of age and could be emancipated. Trial Transcript 472:1-472:11. This testimony allowed the jury to infer reasonably that Mabberly and the victim were not married at the time of the offenses charged in the indictment. *Compare with In re Brown*, 4th Dist. Ross No. 94 CA 2056, 1995 WL 328957, *4 (June 2, 1995). With respect to the second element, the victim testified that Mabberly engaged in sexual conduct with her on numerous occasions, and with respect to the third element, the victim's testimony demonstrated that many of these incidents occurred before her thirteenth birthday. Trial Transcript at 445:6-445:10, 464:21-465:23 and 472:15-482:22. Despite the victim's uncertainty about the exact dates on which most of the sexual conduct occurred, her testimony established that at least four distinct incidents of sexual conduct occurred before she reached 13 years of age.

**{¶ 16}** To prove that Mabberly violated R.C. 2907.04(A) (unlawful sexual conduct

---

[5] R.C. 2901.01(A) defines the term "[s]exual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another."

with a minor), the State had to present evidence showing that: (1) Mabberly engaged in sexual conduct with the victim; (2) the victim was not his spouse when the sexual conduct occurred; (3) Mabberly was 18 years of age or older at the time; (4) the victim was 13 years of age or older, but under 16 years of age; and (5) Mabberly knew the victim's age or was reckless in that regard. With respect to the first and second elements, the victim testified that Mabberly repeatedly engaged in sexual conduct with her, and as noted, her testimony supported a reasonable inference that she and Mabberly were not married. *See* Trial Transcript 472:1-472:11 and 485:25-491:19. With respect to the third element, an officer with the City of Riverside Police Department testified to Mabberly's date of birth, which indicated that Mabberly was over 18 years of age at all relevant times, and with respect to the fourth element, the victim's testimony showed that she was over 13, but under 16, during several incidents of sexual conduct. *See id.* at 445:6-445:10, 487:15-491:19 and 746:19-746:21. With respect to the fifth element, the State did not introduce evidence specifically directed to Mabberly's knowledge, although the combined testimony of the victim and her mother provided the jury with ample support for the reasonable inference that Mabberly knew or recklessly disregarded the victim's age—for instance, the victim and her mother testified that Mabberly accompanied the victim to a dance held at her middle school. *See id.* at 445:6-445:10, 481:3-483:3 and 658:22-659:25.

{¶ 17} The State also presented the testimony of a psychologist who specializes in providing therapy "to children who've experienced trauma or who have disclosed sexual abuse," and the testimony of a gynecologist who examined the victim in connection with the allegations against Mabberly. *Id.* at 251:21-252:16 and 333:7-335:1. In her testimony, the psychologist discussed her therapeutic assessment of the victim's

emotional well-being, her treatment of the victim, the reasons that children often delay in reporting sexual abuse, and briefly, the susceptibility of memory to alteration over time, though she ultimately offered no opinion regarding the truth of the victim's testimony. *See id.* at 259:16-260:25, 262:17-263:13, 272:4-273:16 and 285:12-288:13. The gynecologist testified that her examination of the victim did not permit her to determine conclusively whether the victim had previously engaged in vaginal intercourse. *Id.* at 336:24-339:21. Additionally, the State called the victim's mother, who testified that after she and Mabberly discontinued their romantic relationship, Mabberly refused her repeated demands to stop contacting the victim. *See id.* at 657:5-658:6, 666:22-670:16, 675:3-679:17 and 681:3-682:13.

{¶ 18} In response to the State's evidence, Mabberly called a clinical and forensic psychologist to testify about the reliability of the investigatory interviews of the victim, with a particular emphasis on appropriate forensic interviewing techniques, along with the limitations of memory and its susceptibility to external influences. *See id.* at 352:25-353:6, 363:1-363:6, 364:12-366:20, 373:13-377:5 and 380:12-388:5. The witness expressed his concern that the victim's account of events during such investigatory interviews suggested the possibility that "there might [have] be[en] * * * some external influences on what she had to say." *Id.* at 391:6-391:18. Among other reasons, the witness noted that certain of the victim's statements "were actually quite vague." *Id.* at 391:9-391:11. Similarly, Mabberly's counsel sought to cast doubt on the accuracy of the victim's allegations by attempting to illustrate supposed gaps and inconsistencies in her recollections, including her description of Mabberly's genital organs. *See id.* at 611:20-634:1. As well, Mabberly presented the testimony of four character witnesses, including

his mother; his son; the victim's aunt, who was romantically involved with his son; and a neighbor who lived next to the victim and her mother.

{¶ 19} On this record, we cannot conclude that the jury clearly lost its way in finding Mabberly guilty of rape of a person under 13 years of age and guilty of unlawful sexual conduct with a minor. The State adduced prima facie evidence of each of the elements of the offenses, and the collective testimony of the expert and character witnesses—the State's and Mabberly's alike—did not suffice to prove or to disprove the allegations against Mabberly. As a result, the jury essentially had to decide whether the victim's allegations were credible, and the record provides no indication that the jury's decision to credit the victim's testimony was unreasonable or unfounded. Mabberly's second assignment of error is overruled.

{¶ 20} Mabberly's third and fourth assignments of error are also closely related, so we address them together, as well. For his third assignment of error, Mabberly contends that:

> TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE STATE'S EXPERT TESTIFYING [sic] TO THE DIAGNOSIS AND TREATMENT OF THE ALLEGED VICTIM.

And for his fourth assignment of error, Mabberly contends that:

> TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE STATE REFERENCING [sic] THE FACTS OF THE CASE IN VOIR DIRE.

{¶ 21} Mabberly argues in his third assignment that his defense counsel should have objected when the psychologist called by the State as an expert witness described

her diagnosis and treatment of the victim; according to Mabberly, the psychologist thereby vouched for the victim's credibility.   In his fourth assignment, Mabberly argues that the State improperly "outlined essentially all of the facts of the upcoming case" during voir dire.   Appellant's Br. 15.

{¶ 22} To prevail on a claim of "ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."   *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.).    The *Strickland* test requires a showing that: "(1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel] guaranteed under the Sixth Amendment to the United States Constitution; and (2) * * * defense counsel's errors prejudiced the defendant."    *Id.*, citing *Strickland* at 687. Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."    *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).   To show prejudice, a defendant bears the burden to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of [a given] proceeding would have been different."   *Id.* at 694; *State v. Southern*, 2d Dist. Montgomery No. 27932, 2018-Ohio-4886, ¶ 47.   A failure "to make either showing defeats" the claim.   *Cardenas* at ¶ 38.

{¶ 23} Regarding Mabberly's third assignment of error, an expert witness may not offer a direct opinion on whether a child is telling the truth.   (Citation omitted.)   *State v. Rosas*, 2d Dist. Montgomery No. 22424, 2009-Ohio-1404, ¶ 42.   Nevertheless, the "rules of evidence permit an expert to offer an opinion on an ultimate issue," and "this includes

a psychologist's expert opinion on whether a * * * child was sexually abused." *Id.*, citing *State v. Stowers*, 81 Ohio St.3d 260, 261, 690 N.E.2d 881 (1998). An expert, then, may not testify about the truthfulness of a child's statements, but an expert may offer testimony that constitutes "additional support for the truth of the facts testified to by the child, or [otherwise] assists the [jury] in assessing the child's veracity." (Emphasis omitted.) *See Stowers* at 262-263; *see also Rosas* at ¶ 42.

{¶ 24} In her testimony, the State's expert psychologist carefully avoided expressing a direct opinion on the truthfulness of the victim's statements. The psychologist, instead, testified to her diagnosis and treatment of the victim, noting among other things that the victim did "not present as traumatized by the events that have occurred." Trial Transcript 276:24-277:3. Mabberly complains that in the absence of physiological evidence confirming that the victim suffered sexual abuse, the psychologist's testimony was impermissibly based solely on statements made to her by the victim. Yet, we have "held that only expert testimony directly commenting on [a] child's veracity is improper, and that testimony indirectly bolstering a child's credibility <u>is permissible</u>," even if the testimony is offered in the absence of corroborating physiological evidence. (Emphasis added.) *See State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 97 (2d Dist.).[6]

{¶ 25} The psychologist gave her most potentially objectionable testimony on cross-examination. After the psychologist observed that the precise details of the sexual

---

[6] In support of his argument, Mabberly relies primarily on the decision of the Eighth District Court of Appeals in *State v. Knight*, 8th Dist. Cuyahoga No. 87737, 2006-Ohio-6437, though this court has expressly declined to follow that decision. *Compare* Appellant's Br. 7-9, *with State v. Jones*, 2015-Ohio-4116, 43 N.E.3d 833, ¶ 97 (2d Dist.).

abuse were not "really important" for purposes of her treatment of the victim, Mabberly's counsel asked whether the truth of the victim's allegations would "really make [any] difference" at all, to which the psychologist answered that "if [the sexual abuse] truly didn't happen[,] then [she and the victim] would have a bigger issue to be discussing in therapy." Trial Transcript 299:11-300:4. This remark borders on impermissible, but inasmuch as the psychologist gave a hypothetical answer to a hypothetical question, she did not directly comment on the truth of any statement made by the victim.

{¶ 26} Moreover, the psychologist made the remark while being cross-examined, specifically in the midst of an exchange during which Mabberly's counsel sought to convince the jury that the psychologist's diagnosis and treatment of the victim should not be perceived as circumstantial validation of the victim's allegations; this line of questioning invited the remark. *See id.* at 297:21-300:10. For that matter, even if the psychologist indirectly indicated that she believed the victim, she simultaneously conceded the possibility that the victim had been deceiving her. This hardly qualifies as a direct comment on the victim's veracity.

{¶ 27} We find that the psychologist's testimony was not inadmissible, and by extension, that the trial court would not have erred by overruling an objection to the testimony. Consequently, Mabberly cannot demonstrate that he suffered prejudice in the absence of an objection, and he therefore has not established that counsel rendered ineffective assistance in this respect. Mabberly's third assignment of error is overruled.

{¶ 28} Regarding Mabberly's fourth assignment of error, although "fairness requires that jurors be impartial, prospective jurors need not be totally ignorant of the facts and issues involved [in a case] to be qualified [to serve] as jurors" at trial. *See State v.*

*Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 38; *see also State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 51.   The comments Mabberly challenges reflected only the most basic facts of the case, such as the victim's age, the offenses with which Mabberly was charged, the years in which the offenses were alleged to have occurred, and the nature of Care House.   Trial Transcript 86:7-91:2, 93:16-94:5, 99:13-99:17 and 105:2-105:4.   In making these comments, the State was exercising its right to refer to the facts of the case in order to determine which of the prospective jurors were suitable for service on the jury, and which might not be.   *See Jackson* at ¶ 50-51.

{¶ 29} The "scope of voir dire falls within [a] trial court's sound discretion and varies depending on the circumstances of a given case."   *Id.* at ¶ 48.   On this record, we cannot find that the trial court would have committed an abuse of discretion by allowing the foregoing comments over an objection from Mabberly's counsel.   As a result, Mabberly cannot demonstrate that he suffered prejudice because his counsel did not object, meaning that he cannot establish that his counsel thereby failed to render effective assistance.   Mabberly's fourth assignment of error is overruled.

{¶ 30} Mabberly's fifth assignment of error and the State's single cross-assignment of error implicate the same standard of review, so we address these assignments of error together.   For his fifth assignment of error, Mabberly contends that:

APPELLANT WAS PREJUDICED BY THE TRIAL COURT LISTING

[sic] THE INDICTED SEXUAL CONDUCT AS SEQUENCES [sic].

And for its cross-assignment of error, the State contends that:

THE TRIAL COURT ABUSED ITS DISCRETION BY GIVING JURY

INSTRUCTIONS REGARDING THE UNRELIABILITY AND FALLACIES
OF MEMORY THAT REPRESENTED OPINION RATHER THAN LAW.

{¶ 31} Mabberly argues that the "trial court may have erred" in its instructions to the jury by labeling each of the charges against him with "an official sounding sequence number." Appellant's Br. 16. He worries that "the jurors might very well have [interpreted the labels] to mean that the trial had come to a point [at which] the allegations had become so solid that they * * * no longer needed to be discussed as [though they were] allegations," rather than established facts. *Id.*

{¶ 32} The trial court further included a nonstandard instruction addressed to the fallibility of human memory. Trial Transcript 194:3-195:15. According to the State, the trial court thus abused its discretion because the instruction was "biased" in favor of a skeptical assessment of the accuracy of witnesses' memories, and because the instruction was not warranted by the evidence. *See* Appellee's Br. 22 and 24.

{¶ 33} In a criminal case being tried to a jury, the trial court has a statutory obligation to instruct the jury on "all matters of law" that the jury must consider in reaching a verdict, which includes "inform[ing] the jury that [it] is the exclusive judge of all questions of fact" and cautioning the jury that "it must not consider the punishment" that could be imposed on a defendant following a verdict of guilty.[7] *See* R.C. 2945.11. The trial court "has broad discretion * * * to fashion jury instructions" in fulfillment of this obligation, though the instructions must "present a correct, pertinent statement of the law that is appropriate to the facts." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d

---

[7] Pursuant to R.C. 2901.05(C), the trial court must also "read the definitions of 'reasonable doubt' and 'proof beyond a reasonable doubt' " stated in R.C. 2901.05(E).

939, ¶ 46, citing *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, 24 N.E.3d 1147, ¶ 5, and *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993). Appellate review of the statements of law set forth in jury instructions is de novo; if the instructions correctly set forth the law, however, the balance of the instructions, along with the trial court's decision to deliver or to withhold any specific instruction, is reviewed for abuse of discretion. *State v. Ramey*, 2d Dist. Montgomery No. 27636, 2018-Ohio-3072, ¶ 27; *State v. Frazier*, 2d Dist. Clark No. 2008 CA 118, 2010-Ohio-1507, ¶ 37. A "trial court abuses its discretion when it makes a decision [or otherwise exercises its authority in a way] that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 871, ¶ 34, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 34} The formalized practice of instructing juries is a relatively modern development, and "the movement toward drafting and publishing * * * pattern instructions by committees of judges and lawyers began [as recently as] the 1930s." Rich, *The Most Grotesque Structure of All: Reforming Jury Instructions, One Misshapen Stone at a Time*, 24 Geo.J.Legal Ethics 819, 821-822 (2011); Tiersma, *The Rocky Road to Legal Reform: Improving the Language of Jury Instructions*, 66 Brook.L.Rev. 1081, 1082-1084 (2001). In fact, even the seemingly a priori principle of the "separation of the functions of [trial] court[s] and jur[ies]," by which "the duty of [a trial] court [is] to expound the law, and that of [a] jury [is] to apply the law as thus declared to the facts," was not affirmed by the United States Supreme Court until 1895. *See Sparf v. United States*, 156 U.S. 51, 64-65 and 106, 15 S.Ct. 273, 39 L.Ed. 343 (1895); Tiersma, 66 Brook.L.Rev. at 1083. Before the advent of pattern instructions, judges and lawyers had to prepare instructions themselves

on a case-by-case basis. Rich, 24 Geo.J.Legal Ethics at 821; Tiersma, 66 Brook.L.Rev. at 1083.

{¶ 35} Under Ohio law, the drafting or compilation of jury instructions is still left almost entirely to a trial court's discretion in the first instance.[8] Standard 16 of the Ohio Trial Court Jury Use and Management Standards states that "trial judge[s]" should "[p]repare and deliver instructions which are readily understood by [persons] unfamiliar with the legal system," and the official comment adds that "[r]eference may be made to *Ohio Jury Instructions*." (Emphasis added.) Sup.R., Appendix B; *see also State v. Martens*, 90 Ohio App.3d 338, 343, 629 N.E.2d 462 (3d Dist.1993) (noting that the "instructions found in *Ohio Jury Instructions* are not mandatory"). Yet, other than guidance of this kind, neither Standard 16 nor Crim.R. 30 establishes any formal process for regulating the preparation and content of jury instructions. *See* Crim.R. 30. Moreover, the Ohio Supreme Court has refrained from drafting compulsory instructions or even instituting a process for the creation of instructions; for example, when confronted with a challenge to the use of the *Allen* "or 'dynamite' charge, as it is also known," the Court declined the opportunity to create a mandatory alternative and instead merely "propose[d] a supplemental instruction" to replace the *Allen* charge.[9] *State v. Howard*,

---

[8] Ordinarily, a trial court should also give instructions requested by the parties if the instructions correctly state the law, if they are applicable to the facts of the case, and if "reasonable minds might reach the conclusion sought by the instructions." *State v. Thompson*, 2d Dist. Montgomery No. 22984, 2010-Ohio-1680, ¶ 174, citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991).

[9] The *Allen* charge, taken from a decision of the United States Supreme Court, was "given to juries in Ohio [if they became] deadlocked on the question of conviction or acquittal." *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), paragraph one of the syllabus; *see also Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

42 Ohio St.3d 18, 537 N.E.2d 188 (1989).

{¶ 36} In his fifth assignment of error, Mabberly argues that the "trial court may have erred" by "list[ing] the indicted instances of sexual conduct, not as 'first charged [fill in] encounter, or first alleged [fill in] encounter, but rather gave each indicated count an official sounding sequence number." Appellant's Br. 16. He posits that the jurors might have interpreted these labels to mean that Mabberly's guilt had already been proven.

{¶ 37} Mabberly's argument is utterly without merit. The trial court used the labels, without objection, simply to distinguish each of the four counts of rape from the others, and each of the two counts of unlawful sexual conduct from the other. Trial Transcript 782:13-783:19. Furthermore, the record belies virtually any possibility that the jury could have interpreted the labels as a suggestion of Mabberly's guilt, because for each of the six counts submitted to the jury, the trial court provided one verdict form for the jury to indicate a verdict of guilty, and a separate verdict form for the jury to indicate a verdict of not guilty. *Id.* at 926:20-930:21. Mabberly's fifth assignment of error is overruled.

{¶ 38} In its cross-assignment of error, the State challenges the trial court's instruction pertaining to the evaluation of witnesses' credibility; the State objected to the instruction before and during Mabberly's trial. Trial Transcript 182:21-184:4. The instruction incorporated the most generally applicable components of the pattern instruction on credibility, *Ohio Jury Instructions*, CR Section 409.05 (Rev. Aug. 15, 2012), but the trial court also advised the jurors, in its own words, that when evaluating the testimony of a witness, they

should understand that imperfect memory is the norm. Memory can be

imperfect and susceptible to distortion and loss because human memory does not work like a video camera, simply accurately recording events we see and hear, so that we need only recall them later. Rather, memory is an adaptive process based upon reconstruction. Errors in memory can be driven by bias and experience because human brains are geared to look for regularities in the world.

For example, a person may actually remember nonexistent information based upon their [sic] expectations. Witnesses, jurors and judges are not immune to this reality. This is not abnormal. If a witness believes an event should have happened in a certain way, based upon the witness's previous experiences, the witness may think the event happened in that way, even if it did not. Previously learned information including experiences in [sic] bias, [sic] can influence the learning of new information, such that whatever happens in an event can become associated, not just with elements actually present in the event, but also what is expected to be present based upon past experiences and biases.

We have known for decades that the passage of time between experiencing an event and later recalling it, [sic] can adversely affect accurate recall of the memory, because recent memories compete with older memories at the time of retrieval.

Simply retrieving a memory can subject it to alteration or even elimination. Memory distortions can unconsciously occur merely with retelling. Slight variations in the wording of questions can result in memory

distortion. For example, asking "how fast was the black car going, [sic] when it slammed into the white car?" can result in a memory for increased speed as opposed to asking "how fast was the black car going when it contacted the white car?"

The general belief that confident [sic] detailed memories are always accurate and reliable is contrary to research suggesting that the opposite is possible, that confidently recalled memories can be inaccurate and that real memories are not always highly confident [sic] or detailed.

Trial Transcript 194:3-195:15.

{¶ 39} Maintaining that the instruction was "biased," inasmuch as it was "directed exclusively at the unreliability of memory," and that it was "entirely irrelevant" under the circumstances, the State argues that the trial court's decision to give the instruction should be reviewed for abuse of discretion. *See* Appellee's Br. 21-22 and 24. Mabberly replies to the State's arguments with an unpersuasive defense of the content of the instruction, but he takes no position on the appropriate standard of review. *See generally* Appellant's Reply 1-11, Oct. 25, 2018. The amici curiae contend, incorrectly, that jury instructions are "reviewable only for abuse of discretion," to which they add that " 'the plain error rule should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice.' "[10] (Emphasis added.) Brief of Amici Curiae 20, quoting an unattributed source.

---

[10] The amici curiae fail to provide an accurate citation to the source of the material they quote, suggesting that their reference to the plain error rule might be the product of mistaken copying and pasting. Brief of Amici Curiae 20.

**{¶ 40}** Although statements of legal principles included in jury instructions are reviewed de novo, the instruction at issue here presents no such statement, meaning that abuse of discretion is the proper standard of review in this case. *Ramey*, 2d Dist. Montgomery No. 27636, 2018-Ohio-3072, at ¶ 27; *Frazier*, 2d Dist. Clark No. 2008 CA 118, 2010-Ohio-1507, ¶ 37. We find accordingly that the trial court abused its discretion in two respects by delivering the instruction. First, the text of the instruction incorporates critical concepts and terms that are not adequately explained. Second, the instruction actively encourages jurors to mistrust witnesses' memories, rather than objectively cautioning jurors that witnesses' memories might not be completely accurate; this problem was compounded by the trial court's decision to allow the defense to call an expert to testify on the same subject.

**{¶ 41}** Regarding the instruction itself, the text comprises two basic propositions of fact: (1) human memory is imperfect for a number of reasons, such as the passage of time; and (2) a witness's expression of confidence in the accuracy of a memory is not a reliable indicator of actual accuracy. Trial Transcript 194:3-195:15. We accept the former proposition as axiomatic, and the latter proposition appears to reflect a broad consensus among experts. *See, e.g., Krist v. Eli Lilly & Co.*, 897 F.2d 293, 296-297 (7th Cir.1990); *United States v. Smith*, 736 F.2d 1103, 1105-1107 (6th Cir.1984); *State v. Williams*, 8th Dist. Cuyahoga No. 58549, 1991 WL 95061, *3 (May 30, 1991); *State v. Mahmoud*, 2016 ME 135, 147 A.3d 833, ¶ 12-13; *Commonwealth v. Gomes*, 470 Mass. 352, 369-376, 22 N.E.3d 897 (2015); *State v. Guilbert*, 306 Conn. 218, 234-237, 49 A.3d 705 (2012); *State v. Lawson*, 352 Or. 724, 739-740, 291 P.3d 673 (2012); *State v. Henderson*, 208 N.J. 208, 245-247, 253-254 and 267, 27 A.3d 872 (2011); *State v. Long*,

721 P.2d 483, 488-490 (Utah 1986); Bennett, *Unspringing the Witness Memory and Demeanor Trap: What Every Judge and Juror Needs to Know About Cognitive Psychology and Witness Credibility*, 64 Am.U.L.Rev. 1331, 1340-1343 and 1355-1360 (2015).

**{¶ 42}** Nevertheless, in the form it was delivered to the jury, the instruction omits definitions for several significant concepts and terms. For instance, the instruction describes "memory [as] an adaptive process based upon reconstruction." *See* Trial Transcript 194:8:194:9. Neither the term "adaptive process" nor the term "reconstruction" is precisely defined, however, and the use of these terms thus detracts from the clarity of the fundamental premise that "human memory does not work like a video camera, simply [generating] a recording [of] events" that can afterward be stored indefinitely and retrieved repeatedly with absolute fidelity. *Id.* at 194:4-194:8. Similarly, the instruction states that "[i]f a witness believes an event should have happened in a certain way, based upon the witness's previous experiences, [then] the witness may think the event happened in that way, even if it did not." *Id.* at 194:15-194:18. Yet, this statement could mean that preconceived notions adversely affect a witness's ability to perceive an event accurately, or that preconceived notions adversely affect the accuracy of a witness's memory of an event. Likewise, the instruction states that the passage of time "can adversely affect [the accuracy of a] memory" because "recent memories compete with older memories at the time of retrieval." *Id.* at 194:224-195:2. The meaning of the word "compete" in this context is somewhat uncertain, and the reference to competition among old and new memories specifically "at the time of retrieval" adds ambiguity to the otherwise straightforward concept that the accuracy of a memory is likely

to diminish over time.

{¶ 43} By introducing such ambiguity, the trial court distanced the instruction from the core principle on which even experts cannot disagree—that memory is imperfect or, in the words of the instruction, that "human memory is not like a video camera." Trial Transcript 194:6. A number of other assertions included in the instruction also appear to reflect a broad consensus among experts, but the court's arbitrary emphasis on certain aspects of contemporary memory research results in the arbitrary exclusion of others, further removing the instruction from solid scientific ground. Though the instruction notes that personal "bias[es] and experience[s]" can produce "[e]rrors in memory," it makes no mention, for example, of the reliability of memories formed during "[e]motionally charged events"; the distinction between long-term and short-term memory, and the various types of each; or the possible effects of individual physiology or substance abuse. *Id.* at 194:9-10; *see, e.g.,* Jerome, *The Biology of Memory*, Time (Dec. 21, 2018) 10-13.

{¶ 44} Perhaps counterintuitively, a more concise instruction, focused tightly on the basic idea that memory is imperfect, would have better informed the jurors and, simultaneously, obviated the need to present the jurors with concepts and terms that require a far more detailed analysis than is appropriate or helpful in the context of jury instructions. The instruction's relative prolixity, on the other hand, might mislead jurors. More importantly, the instruction diverges from Ohio precedent with respect to the statement that a witness's confidence is not a reliable indication of the accuracy of the witness's memory. The apparent expert consensus notwithstanding, this statement directly conflicts with one factor of the *Manson* test for the evaluation of eyewitness identifications, which the Ohio Supreme Court adopted in its decision in *State v. Broom,*

40 Ohio St.3d 277, 533 N.E.2d 682 (1988).[11]

{¶ 45} Furthermore, the instruction effectively counsels jurors to discount the accuracy of witnesses' memories, as opposed to cautioning jurors objectively that witnesses' memories might be incorrect. The text of the instruction consists of 346 words arranged into 15 sentences. Thirteen out of the 15 sentences either refer to the fallibility of memory, or explain why a given memory might be unreliable.[12] For the purpose of reminding jurors that witnesses' memories are subject to imperfections, the instruction is needlessly repetitive, and it consequently verges on advocacy, rather than neutral guidance.[13] An instruction "must be balanced and neutral" to constitute an appropriate exercise of discretion. *See, e.g., Howard*, 42 Ohio St.3d at 24, 537 N.E.2d 188.

{¶ 46} The trial court compounded this problem by delivering the instruction at a trial during which it also allowed the defense to present expert testimony on the

---

[11] The *Manson* test refers to the decision of the United States Supreme Court in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), although the Court drew the substance of the test from its earlier decision in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *Manson* at 114; *see also Biggers* at 199-200.

[12] One of the remaining sentences indicates that "[w]itnesses, jurors and judges are not immune from this reality," and the other assures jurors that "[t]his is not abnormal." Trial Transcript 194:13-194:15.

[13] The instruction on "the believability of witnesses and the weight if any to [be] give[n] to their testimony" provides an illustrative comparison. Trial Transcript 193:11-193:12. In this instruction, the court informs the jurors that "they alone" must determine whether a witness is credible and then presents a list of considerations that the jurors "may, if [they] wish," consult for the purpose of making a credibility determination. *Id.* at 193:10-194:2. After informing the jurors that they "must decide whether to believe a * * * witness," the instruction does not redundantly remind jurors that they are charged with assessing witnesses' credibility or that witnesses might not testify truthfully; by contrast, the instruction on memory begins by admonishing jurors that "imperfect memory is the norm" and follows its initial admonition with 12 variations on that theme.

shortcomings of human memory and the reasons, apart from outright dishonesty, that a memory might be inaccurate. In his testimony, the expert witness raised many of the same issues that the court raised in its instruction, at times echoing the court's language. *See* Trial Transcript 364:12-366:20, 368:4-369:2, 370:3-370:25, 372:20-378:19, 383:24-384:22, 386:5-388:2, 389:21-390:23. The combination of the instruction and the testimony of the expert witness not only placed undue emphasis on the fallibility of memory, but further posed a risk that jurors would feel obligated to credit the expert's testimony.

{¶ 47} For all of the foregoing reasons, we find that the trial court abused its discretion by delivering the instruction on memory. The instruction arbitrarily incorporated critical concepts and terms without defining or adequately explaining them; moreover, irrespective of the lack of adequate explanation, these concepts and terms were redundant elaborations on the basic proposition that a witness's memory might not be accurate to the last detail. As a result of this redundancy, the tone of the instruction approached that of an editorial essay, in contrast to that of a detached, cautionary notification. Although the facts of this case were sufficient to warrant either an instruction on memory, or the presentation of expert testimony on memory, the trial court invested the subject with an inappropriate, arbitrary degree of prominence by delivering the instruction and also allowing the defense's expert to testify. The State's cross-assignment of error is sustained.

### III. Conclusion

{¶ 48} We find that the jury's verdicts were not contrary to the weight of the evidence; that Mabberly's defense counsel was not ineffective for either of the reasons

argued by Mabberly; and that the trial court did not refer to the charges against him such that his guilt was implied. Therefore, Mabberly's convictions are affirmed.

**{¶ 49}** Regarding the State's cross-assignment of error, we find that the trial court's instruction on memory constituted an abuse of discretion with respect to the content of the instruction, and with respect to the use of the instruction under the circumstances of this case. Although we sustain the State's cross-assignment of error, the State is not entitled to any relief in this case.

**{¶ 50}** Finally, we note that this appeal is one of three pending appeals dealing with the trial court's use of an instruction concerning the fallibility of human memory. *See also State v. Rac*, 2d Dist. Montgomery No. 27536 (Montgomery C.P. No. 2016-CR-04002); *State v. Pettiford*, 2d Dist. Montgomery No. 27490 (Montgomery C.P. No. 2016-CR-02713). Each opinion confronts a distinct instruction, albeit differing only slightly from the others, delivered within the context of a distinct record; nonetheless, each opinion, though based upon somewhat different reasoning, holds that the trial court erred by delivering the instruction. Collectively, the opinions can support the following three conclusions.

**{¶ 51}** First, unless the Ohio Supreme Court rules otherwise, information concerning memory and identification may be presented through expert testimony subject to the adversarial process. In cases in which such expert testimony is presented, however, a corresponding jury instruction-whether preliminary or final-would be inappropriate if it appears either to endorse or to reject the testimony.

**{¶ 52}** Second, a concise, limited and neutral instruction on memory or identification that accords with presently controlling precedent may be appropriate.

Whether such an instruction would require validation through pre-trial presentation of expert evidence-again, subject to the adversarial process-would depend upon the precise wording of the instruction.

{¶ 53} Third, evaluated pursuant to either of the foregoing conclusions, none of the three iterations of the trial court's memory instruction was appropriate. In the instant case specifically, the instruction was an abuse of discretion by both measures.

. . . . . . . . . . . . .

FROELICH, J., concurs.

WELBAUM, P.J., concurring:

{¶ 54} I disagree with the language in the majority opinion regarding the State's Cross Assignment of Error to the extent it suggests that, in the absence of Ohio Supreme Court precedent, trial courts may instruct juries in enhanced detail about the science of memory. As set forth in *State v. Pettiford*, 2d Dist. Montgomery No. 27490, I believe that at this stage of development in Ohio, the science of witness memory relating to identification or otherwise, is the proper subject of expert testimony rather than the use of fortified jury instructions.

{¶ 55} Furthermore, where expert testimony on the subject has been provided to the jury, trial courts should confine the jury instructions to general statements about witness credibility. Experts are simply witnesses like any others, and to specifically instruct juries in detail on what an expert has said improperly emphasizes the testimony.

{¶ 56} I believe the trial court committed an error of law and also abused its discretion in giving the enhanced jury instructions on the subject of witness memory in the absence of controlling authority from the Ohio Supreme Court.

{¶ 57} Otherwise, I agree with the decision to sustain the State's Cross-Assignment of Error.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Brock A. Schoenlein
John K. Carroll
Alexis Agathocleous
Elizabeth Berry
Hon. Steven K. Dankof